UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

NURSES' REGISTRY AND
HOME HEALTH CORPORATION

    DEBTOR

CASE NO. 15-51278
CHAPTER 11

_____

NURSES' REGISTRY AND
HOME HEALTH CORPORATION    PLAINTIFF

v.    Adv. Proc. No. 15-05___

SYLVIA MATHEWS BURWELL, in her capacity as
Secretary of the United States Department of Health & Human Services;
the CENTERS FOR MEDICARE AND MEDICAID SERVICES;
and ADVANCEMED CORPORATION    DEFENDANTS

**VERIFIED COMPLAINT FOR TURNOVER OF PROPERTY OF THE ESTATE, DECLARATORY AND INJUNCTIVE RELIEF**

Comes Nurses' Registry and Home Health Corporation (the "Debtor"), as debtor and debtor in possession, by counsel, and pursuant to 11 U.S.C. §§105, 541, 542 and Fed.R.Bankr.P. 7001 and 7065, states as follows for its complaint against Sylvia Mathews Burwell, in her capacity as Secretary of Health & Human Services ("HHS"), the Centers for Medicare and Medicaid Services ("CMS"), and AdvanceMed Corporation ("AdvanceMed"):

**JURISDICTION AND VENUE**

1    The United States Bankruptcy Court for the Eastern District of Kentucky (the "Court") has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334. This

Court has jurisdiction over the above-captioned adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.

2. The Debtor is a Kentucky corporation which maintains its principal place of business in Fayette County, Kentucky. Accordingly, venue for the Debtor's Chapter 11 case is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. This matter constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), and (O).

## FACTUAL ALLEGATIONS

4. On June 26, 2015 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

5. The Debtor is a Kentucky corporation founded and incorporated in 1984. The Debtor provides home health care services in central Kentucky including skilled nursing, physical therapy, occupational therapy, nursing assistants, speech language pathology, and social work. As of the Petition Date, the Debtor had a total patient census of approximately 1348.

6. Defendant Sylvia Mathews Burwell is the Secretary for Health & Human Services (the "Secretary"), which is the agency of the United States responsible for oversight, administration and control of the federal Medicare program. The Secretary is sued only in her official capacity.

7. Defendant CMS is an agency of the United States under the control and direction of HHS. CMS is responsible for implementation, oversight and control of payments to providers of medical care on behalf of Medicare patients.

8. Defendant AdvanceMed is a Virginia corporation which is wholly owned by NCI, Inc., whose agent for service of process is CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060. AdvanceMed is a fiscal intermediary for CMS which processes payments from Medicare owed to the Debtor and otherwise communicates with the Debtor on behalf of HHS and CMS.

9. In the ordinary course of the Debtor's business, it provides a variety of medical goods and services to patients who are eligible for Medicare coverage. The Debtor submits requests for reimbursement for such goods and services (a "Medicare Receivable") to CMS, which reviews and processes them. Upon approval of the payment requests, CMS causes payment for the goods and services to be issued to the Debtor through AdvanceMed.

10. The Debtor's Medicare Receivables are property of the Debtor's Estate pursuant to 11 U.S.C. § 541(a).

11. The Debtor employs slightly less than 200 direct employees, as well as numerous third-party contracted providers to provide care and services to its patients. The Debtor's employees are dependent upon the Debtor's continued operations for their livelihood, and the third-party contract providers also provide critical patient services and rely on prompt payments as part of their business operations.

12. On an annual basis, Medicare Receivables represent approximately 65% of the Debtor's revenues. Medicare Receivables average approximately $1.3 million per month.

13. On March 18, 2008, a *qui tam* action asserting claims under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, was filed against the Debtor in the U.S. District Court for the Eastern District of Kentucky by two former employees/ *qui tam* relators. Over three years later, on July 22, 2011, the United States of America intervened and filed its Complaint in Intervention against

the Debtor and adding Lennie House and Vicki House individually. The action is styled *United States of America, ex rel. Alisia Robinson-Hill and David A. Price v. Nurses' Registry and Home Health Corp., Lennie G. House, Vicki S. House*, Case No. 5:08-CV-145-KKC (E.D. Ky.) (the "Federal Action"). The Federal Action is set for trial in August, 2015, and various partial summary judgment motions are submitted by both sides. Although the parties have engaged in efforts to amicably resolve the claims in the Federal Action, including a formal mediation in July 2014, those efforts have been unsuccessful to date.

14. On May 6, 2015, AdvanceMed notified the Debtor that CMS was suspending Medicare payments to the Debtor (the "Suspension Notice"), pursuant to the letter which is attached as Exhibit A and incorporated herein by reference.

15. On May 19, 2015, the Debtor submitted a rebuttal statement to AdvanceMed (the "Rebuttal"), a true copy of which is attached as Exhibit B and incorporated herein by reference. The Rebuttal notified AdvanceMed of numerous substantive changes in personnel and management practices at the Debtor since the events relied upon as justification for the suspension.

16. On June 2, 2015, AdvanceMed notified the Debtor that CMS' suspension of Medicare payments would continue despite the information provided by the Rebuttal (the "Final Notice"), a true copy of which is attached as Exhibit C and incorporated herein by reference. The Final Notice advised the Debtor that "…no remedial measures and other specific condition(s) will justify the removal of this payment suspension" and that "The determination to continue the payment suspension is not appealable." See, Final Notice at pp. 3, 4.

17. The Debtor was not provided with any notice of or ability to contest CMS' suspension of Medicare payments prior to the Suspension Notice.

4

18. The Debtor has not been provided with any opportunity for a hearing at which evidence could be reviewed or witnesses examined, either prior to, or since the Suspension Notice.

19. Since the Suspension Notice, the Debtor has been unable to fully pay its ongoing operating expenses. As a result, the Debtor has explored options to replace the revenue represented by the Medicare Receivables, and was able to procure several loan advances in the approximate total amount of $2.4 million from the Estate of Lennie G. House, the repayment of which is secured by all assets of the Debtor. The Debtor is unable to obtain any additional funds from Mr. House's Estate at this time.

20. The Debtor has attempted, but been unable to, obtain any additional funds from any source to fund its ongoing operations.

21. Without immediate delivery of the outstanding Medicare Receivables and payment of future Medicare Receivables, the Debtor will have no choice but to cease operations and discharge its patients and employees. Disruption to patient care will cause immediate and irreparable harm to patients, and ceasing operations abruptly will greatly minimize the going concern value of the Debtor for the benefit of all of its constituencies.

## COUNT ONE – TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 542

22. The Debtor repeats and realleges the allegations contained in ¶¶ 1-21 above as though fully set forth herein.

23. HHS, CMS or AdvanceMed holds in its possession, custody or control Medicare Receivables belonging to the Debtor in the amount of at least $1,000,000.00, which amount increases on a daily basis.

24. The Medicare Receivables are property of the Debtor's Estate pursuant to 11 U.S.C. § 541(a), which the Debtor may use, and needs to use, pursuant to 11 U.S.C. § 363 to continue its operations.

25. The Medicare Receivables are debts which are matured and payable on demand or order, and are not subject to setoff under 11 U.S.C. § 553.

26. The Medicare Receivables are a substantial asset of the Debtor's Estate.

27. Therefore, 11 U.S.C. § 542(a) requires that HHS, CMS and AdvanceMed be compelled to immediately turnover the Medicare Receivables to the Debtor.

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in favor of the Debtor: (1) granting the Debtor a judgment against HHS, CMS and AdvanceMed, jointly and severally, in the amount of at least $1,000,000.00; (2) ordering HHS, CMS and AdvanceMed to immediately turn over to the Debtor the Medical Receivables in the above amount, as well as any and all additional Medical Receivables to which the Debtor is or becomes entitled until entry of a subsequent order of this Court; (3) awarding the Debtor its costs herein expended; and (4) granting the Debtor all other relief, legal or equitable, to which the Debtor is entitled.

**COUNT TWO – ISSUANCE OF PRELIMINARY
AND PERMANENT INJUNCTION PURSUANT TO FED.R.BANKR.P. 7065**

28. The Debtor repeats and realleges the allegations contained in ¶¶ 1-27 above as though fully set forth herein.

29. Sections 105 and 542 of the Bankruptcy Code are the statutory predicates for the relief sought by the Debtor.

30. This Court has exclusive jurisdiction over all property of the Debtor's Estate pursuant to 28 U.S.C. § 1334(e).

31. The suspension of payment of the Medicare Receivables due to the Debtor from HHS, CMS or AdvanceMed has, and continues to cause the Debtor to suffer immediate and irreparable harm.

32. The suspension of payment of the Medicare Receivables due to the Debtor from HHS, CMS and AdvanceMed poses an immediate and irreparable harm to patients, employees and third-party providers who rely on the Debtor for care, wages, benefits and payments for services rendered.

33. The Debtor has no other adequate remedy at law for enforcing this Court's exclusive jurisdiction over the Medicare Receivables, both as to the sums which are currently being held by HHS, CMS or AdvanceMed, and to such sums as may become due in the future.

34. Requiring HHS, CMS and AdvanceMed to immediately turn over the Medicare Receivables, and to continue to turn over such funds as become due to the Debtor in the future, poses no threat of significant harm to HHS, CMS or AdvanceMed, as the Medicare Receivables will be expended only pursuant to cash collateral budgets and orders approved by this Court.

35. Requiring HHS, CMS and AdvanceMed to immediately turn over the Medicare Receivables, and to continue to turn over such funds as become due to the Debtor in the future serves the public interest by permitting the Debtor to continue to provide medical goods and services to its patients, and to continue compensating its employees and third-party providers who enable it to provide medical goods and services.

WHEREFORE, Plaintiff respectfully requests that the Court enter an injunction requiring Defendant to immediately end the suspension of payments as set forth in the Suspension Notice and Final Notice, and to immediately turnover the Medical Receivables which exist as of entry of

any such injunction, and which continue to accrue thereafter, pending further orders of the court;

and to award the Debtor such and further relief as is just and proper.

I, Rashonda L. Kennedy, in my capacity as Chief Compliance Officer of Nurses' Registry and Home Health Corporation, being first duly sworn, have reviewed the factual allegations of the Complaint and hereby affirm that they are true and correct.

/s/  Rashonda L. Kennedy
Rashonda L. Kennedy
Chief Compliance Officer

COMMONWEALTH OF KENTUCKY  )
                          )SS
COUNTY OF FAYETTE         )

Subscribed and sworn to before me by Rashonda L. Kennedy, in her capacity as Chief Compliance Officer of Nurses' Registry and Home Health Corporation, on this the 26th day of June, 2015.

/s/  Heather L. Purnell
NOTARY PUBLIC
ID No.: 524630
My Commission expires: 12/17/18

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/  Laura Day DelCotto, Esq.
Amelia Martin Adams, Esq.
KY Bar. No. 81763
KY Bar No. 93038
200 North Upper Street
Lexington, KY 40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
ldelcotto@dlgfirm.com
aadams@dlgfirm.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION
(UNDER PENDING APPLICATION)

\Pleadings\Turnover complaint 20150625.doc