UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

NURSES' REGISTRY AND                                    CASE NO. 15-51278
HOME HEALTH CORPORATION                                 CHAPTER 11

     DEBTOR IN POSSESSION

---

**DEBTOR'S EXPEDITED MOTION FOR INTERIM USE OF
CASH COLLATERAL AND TO SCHEDULE FINAL HEARING**

---

Comes Nurses' Registry and Home Health Corporation, as debtor and debtor in possession (the "Debtor"), by counsel, and pursuant to 11 U.S.C. §§ 361 and 363, Fed. R. Bankr. Proc. 4001, and all other applicable law, hereby moves the Court:  (a) for the entry of an Interim Cash Collateral Order ("Interim Order") in the form tendered herewith or such other order as the Debtor and the Cash Collateral Creditors (as defined below) may agree upon; (b) for authority to use Cash Collateral (as defined below) as set forth on the budget attached hereto as Exhibit A (the "Budget") until a final hearing for continued use can be held, and to provide adequate protection as set forth therein; and (c) to schedule a hearing to consider final approval of the Debtor's use of Cash Collateral as set forth in the Budget and subsequent budgets for future time periods to be submitted in supplement hereto.  The Debtor states that entry of the Interim Order is necessary to ensure continued going concern operations, to protect and preserve the value of the Debtor's assets and its going concern value, for ongoing operations which involve home health care for numerous patients, and for the benefit of creditors and all constituencies.   In support of this Motion, the Debtor respectfully states as follows:

## FED. R. BANKR. P. 4001(b)(1)(B) STATEMENT

(a) Name of Each Entity That May Claim an Interest in Cash Collateral (together, the "Cash Collateral Creditors"):

| Creditor | Documents Evidencing Interests in Cash Collateral | Collateral | Approximate Claim Amount |
|---|---|---|---|
| Estate of Lennie G. House | UCC Financing Statement filed of record in the Kentucky Secretary of State's Office dated May 27, 2015 | All accounts, chattel paper, equipment, instruments, general intangibles, investment property, documents, deposit accounts, letter of credit rights, trademarks, copyrights, letters patent, patent registrations, contracts, amounts held in checking, savings and deposit accounts, licenses and permits issued by governmental agencies, software, intellectual property books and records, and all other personal property and proceeds thereof. | $2,400,000- amounts loaned since cut off of Medicare reimbursements in May 2015 |
| Centers for Medicare & Medicaid Services | Notice of Suspension of Medicare Payments dated May 6, 2015 | Medicare payments owed to the Debtor for services provided | Disputed and contingent upon resolution of litigation and ongoing investigations |

(b) Purposes for the Use of Cash Collateral:  As set forth in more detail in the interim Budget attached hereto as Exhibit A and incorporated herein by reference, the Debtor proposes to use Cash Collateral during the interim period for various immediate needs which if not paid will result in irreparable harm to the Debtor's affairs, to meet its ordinary course postpetition obligations, for all payroll to avoid employee harm and disruption, to pay its expenses, general and administrative operating expenses, and other necessary costs and expenses, including taxes, insurance, and other expenses incurred during the interim period.  Thereafter, Debtor will seek final use of cash collateral subject to further budgets to be submitted in support of ongoing cash use, which are anticipated to include professional fee carve-outs/surcharge, UST fees, any patient care ombudsman as may be warranted or ordered herein, any other patient – related costs and expense including but not limited to Section 503(b)(8) and other costs of chapter 11 to preserve the going concern affairs of the Estate.

(c) Terms and Duration:  The Debtor seek authority to use Cash Collateral, for the interim period effective from the Petition Date through the date of a Final Hearing, to pay those items designated in the Budget attached hereto as Exhibit A.  Notwithstanding the foregoing, for each

rolling calendar monthly period in the Budget (the "Monthly Budget Period"), cash disbursements under the Budget shall not exceed each line item in the budget by more than twenty (20%) percent.  Any expenditure which would cause the Debtor to exceed the total Interim Budget for any given month by more than twenty (20%) percent shall require the approval of the Court or consent of its Cash Collateral Creditors.

(d) Adequate Protection:  In consideration of the Cash Collateral Creditors' consent and for the use of the Cash Collateral by the Debtor and as part of the adequate protection for any diminution in the value of the Cash Collateral Creditors' interests in their prepetition collateral, pursuant to 11 U.S.C. §§ 361 and 363, the Debtor proposes to grant to the Cash Collateral Creditors a replacement lien on the Debtor's postpetition Cash Collateral to the same extent, validity, and priority as existed on the Petition Date (the "Replacement Lien"), which replacement liens remain subject to any further orders of this court regarding carve-outs from Cash Collateral for professionals, UST fees and other costs of administration. As further adequate protection, the Debtor shall continue to account for all cash use, and the proposed cash use is being incurred to preserve property of the Estate, preserve patient care, and generate ongoing revenues.

## JURISDICTION AND VENUE

1.      On June 26, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  The Debtor is operating its business as debtor and debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.      This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (M).

3.      The Debtor maintains its principal place of business in Fayette County, Kentucky. Accordingly, venue for the Debtor's Chapter 11 case is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4.      No trustee or examiner has been appointed in this Chapter 11 case, and no creditors' committee or other official committee has been appointed.

## BACKGROUND

5.      The Debtor is a home health agency licensed by the Commonwealth of Kentucky to provide home health care services to patients in sixteen counties in central Kentucky.  The

3

Debtor was founded and incorporated as a Kentucky corporation in 1984. Today, the Debtor

provides health care services including skilled nursing, physical therapy, occupational therapy,

nursing assistants, speech language pathology, and social work, and it has a total patient census

of approximately 1348. The Debtor's revenues are derived from self-pay patients and payments

from Medicare, Medicaid, and private pay insurance companies. The Debtor submits

approximately 5900 Medicare claims per year on average. The Debtor is believed to be the only

home health provider in central Kentucky that remains "local" in that it is owned and operated by

Kentuckians caring for Kentuckians.

6.      Throughout the Debtor's history, its sole shareholder of the Debtor was always

Lennie House, who also served as the Debtor's President and Chief Executive Officer. Mr.

House passed away on February 23, 2015. Prior to his death, his wife Vicki House had little to

no involvement in the Debtor's day-to-day operations, although she was listed as the Debtor's

Treasurer and Secretary. Since February 2015, Mrs. House has been serving as the Debtor's

President pursuant to a resolution by the Debtor's Board of Directors.

7.      On March 18, 2008, a *qui tam* action pursuant to the False Claims Act, 31 U.S.C.

§ 3729, *et seq.*, was filed in the U.S. District Court for the Eastern District of Kentucky against

the Debtor. More than three years later, on July 22, 2011, the United States of America

intervened in that action and filed its Complaint in Intervention naming the Debtor and Mr. and

Mrs. House as defendants. The action is presently styled *United States of America, ex rel. Alisia

Robinson-Hill and David A. Price v. Nurses' Registry and home Health Corp., Lennie G. House,

Vicki S. House*, Case No. 5:08-CV-145-KKC (E.D. Ky.) (the "Federal Action"). The Federal

Action is set for trial in August 2015.

8.      On May 6, 2015, United States Department of Health and Human Services,

through its agency, the Centers for Medicare and Medicaid Services ("CMS") and its fiscal

intermediary, AdvanceMed Corporation ("AdvanceMed") sent the Debtor a Notice of Suspension of Medicare Payments, indicating that CMS was suspending all Medicare payments owed to the Debtor, effective May 4, 2015.  The Debtor has since been in extensive negotiation with CMS in an attempt to resolve the matters at issue in the Federal Action and to lift the suspension of Medicare payments to the Debtor.  To date, the Debtor has not been able to reach a consensual agreement with CMS, and CMS has not resumed payment of Medicare payments to the Debtor.  Accordingly, faced with no other option for regaining the use of its cash flow, the Debtor commenced its Chapter 11 case to recover possession of its continually accruing Medicare payments so that it can continue operating and providing quality care to its patients, while also generating revenues for the benefit of creditors and all other interested parties.

9.      More information about the Debtor and its historical background, operations, and finances can be found in the Affidavit of Rashonda L. Kennedy in Support of Chapter 11 Petition and First Day Motions.

**REQUESTED RELIEF**

10.      By this Motion, the Debtor requests the authority to use Cash Collateral on an interim basis and to set a final hearing for continued Cash Collateral use pursuant to a final order.  As used herein, "Cash Collateral" shall mean:  (i) all cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents derived from any secured creditor's collateral and from the Debtor's operations including all reimbursement claims for services rendered; (ii) all funds currently held by CMS for claims submitted which have been suppressed and held in escrow by CMS since approximately May 4, 2015; and (iii) any and all proceeds, rents, or profits of any collateral and from services rendered,  including without limitation all amounts (A) received by the Debtor in the collection of the Debtor's prepetition account

5

receivables and received by either the Debtor or its assignees, and (B) generated by the Debtor's

operations, both prepetition and postpetition, and received by the Debtor or its assignees.

11.     The Centers for Medicare & Medicaid Services ("CMS") claims an interest in the

Debtor's Cash Collateral pursuant to the Notice of Suspension of Medicare Payments dated May

6, 2015 that it sent to the Debtor through AdvanceMed Corporation.  Pursuant to EDKY LBR

4001-2(b), the Debtor will file such evidence of the creation and perfection of CMS' interests in

the Cash Collateral upon receipt from CMS.  Contemporaneously herewith, the Debtor has

commenced an adversary proceeding against United States Department of Health and Human

Services ("HHS"), and its agency, CMS, seeking turnover, release and return of final and RAP

("Request of Anticipated") Medicare payments to which the Debtor is entitled that are being

frozen, suppressed, and held by CMS pursuant to its Notice of Suspension, and also seeking a

temporary and preliminary injunction directing CMS to release all held funds to the Debtor in

Possession, to be used only pursuant to the Budget and per orders of this Court.  The Debtor is

also contemporaneously filing an emergency motion seeking a preliminary injunction or

temporary restraining order declaring that CMS shall immediately release all final Medicare

receivables owed to the Debtor that are in its possession, to be used solely in accordance with

orders of this Court.  The Budget attached hereto contemplates that the Debtor will receive the

final Medicare payments currently held by CMS in the approximate amount of $975,000, and

also that the Debtor will receive all future final Medicare payments to which they are entitled.

12.     The probate Estate of Lennie G. House (the "House Probate Estate") claims a

secured interest in the Debtor's Cash Collateral pursuant to its UCC Financing Statement filed of

record in the Kentucky Secretary of State's Office dated May 27, 2015.  Pursuant to EDKY LBR

4001-2(b), the Debtor is filing a true and accurate copy of that Financing Statement

contemporaneously herewith, and it will file copies of other documents evidencing the House

Probate Estate's interests in Cash Collateral upon receipt from the Estate.

13.     The Debtor's immediate need to use Cash Collateral during the interim period is

essential to continuation of the Debtor's going-concern operations and crucial to the public

interests involved in the health, safety and welfare of hundreds of Medicare and Medicaid

patients. The Debtor has had the vast majority of its cash flow abruptly shut off by CMS,

leaving patient care, employees, nurses, and independent contractor service providers for patients

and other creditors in harm. Without the use of Cash Collateral as a means of providing working

capital, the Debtor cannot meet its ongoing obligations incurred in the ordinary course of

business and cannot continue to provide quality care to its patients. The Debtor requires use of

such funds to meet its postpetition obligations and to pay its business expenses, general and

administrative operating expenses, and other necessary costs and expenses, including taxes and

insurance. In short, the Debtor is unable to operate without the use of Cash Collateral, and the

entry of an interim Order is necessary to avoid immediate and irreparable harm to the Debtor's

operations and to its creditors, patients, and other parties in interest.

14.     To preserve the value of the Debtor's assets and to allow the Debtor to continue to

providing the highest level of care to its patients, the Debtor requires the interim use of Cash

Collateral and without such use, the value of the Debtor's assets will immediately and

substantially diminish, and the Debtor would be forced to cease its operations. If the Debtor's

operations cease, it involves much more than locking doors and turning off the lights, and the

lives of many elderly and special needs individuals are significantly impacted. The preservation

of the status quo for a limited period is of utmost importance under these circumstances.

15.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor "may not use,

sell or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral

7

consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 362(c)(2).  The Debtor has general consent for cash use from the House Probate Estate.  The Debtor has requested, but as of the filing hereof, does not have consent from CMS for release of the cash collateral it is holding or for any use whatsoever, but it will continue to negotiate with CMS and attempt to reach a consensual agreement for the use of Cash Collateral prior to the hearing hereon and as the case progresses.

16.     Good cause has been shown for the entry of the Interim Order.  Among other things, entry of the Interim Order will allow the Debtor to maintain its operations and preserve its assets, to maximize going concern value for all creditors and to protect patient care concerns.  Further, the use of Cash Collateral will allow the Debtor to pay wages, insurance, taxes, and other ordinary course expenses necessary to maintain the Debtor's ongoing operations.

17.     Additionally, while not part of any interim budget or interim order, for any final cash collateral order and budget the Debtor will be requesting customary "carve-outs" or surcharge of Cash Collateral in sums set forth in future budgets for routine costs of administration in Chapter 11, including but not limited to professional fees, United States Trustee fees, and for health care cases, any patient care ombudsman and other healthcare related administrative claims.  These costs of administration are necessary and essential for the Debtor to pay in order to continue in this Chapter 11 proceeding.  If a Committee is appointed in this case, the Debtor will seek permission for a carve-out to pay fees associated with the operation of a Committee.

18.     The Debtor proposes entry of an Interim Order and the proposed Budget attached hereto as Exhibit A.  The Debtor proposes that it be authorized to use the Cash Collateral under the terms of the Budget, subject to the ability to exceed any given line item in the Budget by no

more than twenty percent (20%).  Any expenditure that would cause the Debtor to exceed the

total Interim Budget for any given month by more than twenty percent (20%) shall require the

prior approval of the Court or consent of the Cash Collateral Creditors.

19.      As adequate protection for any diminution in value of the Cash Collateral

Creditors' interests in the Cash Collateral, pursuant to 11 U.S.C. §§ 361 and 363, the Debtor

proposes to grant the Cash Collateral Creditors each Replacement Liens on the Debtor's

postpetition Cash Collateral to the same extent, validity, and priority as existed on the Petition

Date, subject to any future carve-outs as described above.  As further adequate protection, the

Debtor shall continue to account for all cash use, and the proposed cash use is being incurred to

preserve property of the Estates.  Further, as the only way that the Debtor will be able to generate

sufficient cash to satisfy the claims of the Cash Collateral Creditors is to continue operating, the

Debtor submits that its continued operations will provide additional adequate protection to those

Creditors.

20.      While not in the interim order, Debtor anticipates in a final order also granting the

Cash Collateral Creditors further adequate protection, if allowed, by granting of an

administrative expense claim only to the extent of the diminution of the value of said Creditors'

interests in the prepetition Cash Collateral.  All liens and security interests granted shall be

deemed effective, valid, and perfected as of the Petition Date, if such liens and security interests

were valid and perfected as of the Petition Date, without the necessity of the filing or lodging by

or with any entity of any documents or instruments otherwise required to be filed or lodged

under applicable non-bankruptcy law.

21.      The proposed interim use of Cash Collateral is for the time period from the

Petition Date until such date as the Court may conduct and conclude a final hearing on this

Motion, which final hearing date is likewise being requested hereby.    Lead counsel Ms.

DelCotto is out of state during a portion of July and requests that the final hearing be scheduled during the week of July 20 if at all possible.

WHEREFORE, the Debtor respectfully requests that the Court enter an order: (i) authorizing Debtor's use of Cash Collateral as set forth herein pursuant to the Budget and interim order through the conclusion of a final hearing, (ii) approving and granting such measure of adequate protection as set forth herein, (iii) scheduling a final hearing, and (iv) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Laura Day DelCotto, Esq.
Laura Day DelCotto, Esq.
KY Bar No. 81763
Amelia Martin Adams, Esq.
KY Bar No. 93038
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
ldelcotto@dlgfirm.com
aadams@dlgfirm.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION
(UNDER PENDING APPLICATION)

Z:\Cash Collateral Mot 20150625.doc